# Stewart *v.* Central Railroad Company of New Jersey, Appellant.

*Negligence—Railroads—Master and servant—Brakeman—Falling in trestle—Contributory negligence—Question for jury.*

1. In an action by a brakeman against a railroad company, his employer, to recover for personal injuries, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where the evidence tends to show that immediately before the accident the plaintiff in the performance of his duty descended from the train as it stopped, and after the train had started again, ran along a cinder track to make the mount, when he tripped and fell on an unplanked trestle which began where the cinder path ended, and the character of which was unknown to plaintiff.

2. In such a case the trial judge could not rule as a matter of law that the unplanked condition of the trestle was an assumed risk of the plaintiff's employment, where the evidence shows that the unplanked trestle was, "not only unusual," but that its condition made it "more dangerous in itself than the ordinary one" so situated.

3. While an employee is deemed to assume the risks ordinarily and reasonably connected with his employment, and is presumed to have notice of those which are obvious, the employer is fixed with the duty to maintain instruments, appliances and conditions

which do not expose his employee to dangers not ordinarily or reasonably incident to the employment; the latter has the right to presume that his employer has performed this duty, and he does not assume risks growing out of unusually dangerous conditions not to be reasonably anticipated by him.

4. Where the measure of duty is a standard of ordinary and reasonable care, the degree of which varies according to the circumstances, and where the facts are disputed or there is any reasonable doubt as to the inferences to be drawn from them, the issues must be submitted to the jury.

Argued Jan. 12, 1912. Appeal, No. 297, Jan. T., 1911, by defendant from judgment of C. P. No. 4, Phila. Co., Dec. T., 1907, No. 2523, on verdict for plaintiff in case of Harrison H. Stewart v. Central Railroad Company of New Jersey. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CARR, J.

. The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for the plaintiff for $20,000, upon which judgment was entered for $15,000, all above that sum having been remitted. Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant, and in dismissing defendant's motion for judgment non obstante veredicto.

*Arthur G. Dickson,* of *Dickson, Beitler & McCouch,* for appellant.—The unplanked condition of the trestle on which the plaintiff tripped was an assumed risk of his employment: Sykes v. Packer, 99 Pa. 465; Brossman v. R. C. Co., 113 Pa. 490; Trainor v. R. R. Co., 137 Pa. 148; Boyd v. Harris, 176 Pa. 484; West v. Southern Pacific Co., 85 Fed. Repr. 392; Narramore v. Ry. Co., 96 Fed. Repr. 298; Tuttle v. Detroit, etc. Ry. Co., 122

U. S. 189 (7 Sup. Ct. Repr. 1166) ; Southern Pacific Co.
v. Seley, 152 U. S. 145 (14 Sup. Ct. Repr. 530) ; Gold-
thwait v. Ry. Co., 160 Mass. 554 (36 N. E. Repr. 486) ;
Goodes v. R. R. Co., 162 Mass. 287 (38 N. E. Repr.
500) ; Ragon v. Ry. Co., 97 Mich. 265 (56 N. W. Repr.
612) ; Henderson v. Coons, 31 Ill. App. 75.

The plaintiff was guilty of contributory negligence:
Pittsburgh & Connellsville R. R. Co. v. Sentmeyer, 92
Pa. 276; N. Y., L. E. & W. R. R. Co. v. Lyons, 119 Pa.
324; Dooner v. Canal Co., 171 Pa. 581; Gibson v. Ry.
Co., 63 N. Y. 449; Finnell v. R. R. Co., 129 N. Y. 669
(29 N. E. Repr. 825) ; Kansas & T. Coal Co. v. Reid, 85
Fed. Repr. 914.

The defendant was not negligent: Cunningham v.
Bridge Works, 197 Pa. 625; Boyd v. Harris, 176 Pa.
484; Tuttle v. Ry. Co., 122 U. S. 189 (7 Sup. Ct. Repr.
1166) ; Ragon v. Ry. Co., 97 Mich 265 (56 N. W. Repr.
612) ; Kerrigan v. R. R Co., 194 Pa. 98; Batterson v.
Ry. Co., 53 Mich. 125 (18 N. W. Repr. 584) ; Koontz v.
Ry. Co., 65 Iowa 224 (21 N. W. Repr. 577) ; Maue v. R.
R. Co., 198 N. Y. 221 (91 N. E. Repr. 629) ; Graham v.
Ry. Co., 62 Fed. Repr. 896; West v. Southern Pacific
Co., 85 Fed. Repr. 392.

*Francis Shunk Brown,* of *Simpson, Brown* and *Wil-
liams,* for appellee.—Where the measure of duty is
ordinary and reasonable care, and the degree of care
varies with the circumstances, the question of defend-
ant's negligence should be left to the jury: Cohen v.
R. R. Co., 211 Pa. 227; Esher v. R. R. & Mining Co., 28
Pa. Super. Ct. 387; McMahen v. White, 30 Pa. Super.
Ct. 169; Colorado Midland Ry. Co. v. Brady, 45 Colo.
203 (101 Pac. Repr. 62).

In many cases it has been held that mere proof of
the dangerous obstruction on, or defect in the railroad
track, will without more, impute negligence to the
railroad company: Choctaw, Oklahoma & Gulf R. R.
Co., v. McDade, 191 U. S. 64 (24 Sup. Ct. Repr. 24) ;

Galveston, H. &. S. A. Ry. Co. v. Slinkard, 17 Texas
Civ. App. 585 (44 S. W. Repr. 35).

In the following cases it was held that where ditches,
cattle guards, etc., in a yard, or at any point on
the roadbed where employees are apt to go in switching
and coupling cars, are left uncovered, and the em-
ployees fall into them, negligence will be imputed to
the defendant: Plank v. N. Y. C. & H. R. R. R. Co., 60
N. Y. 607; (Sliceway under track two feet wide and
two feet deep). Franklin v. Winona & St. P. R. Co.,
37 Minn. 409 (34 N. W. Repr. 898); Millen v. N. Y. C.
& H. R. R. Co., 20 N. Y. App. Div. 92 (46 N. Y. Supp.
748) (ditch 8 to 10 inches deep and 4 inches wide);
Hollenbeck v. Missouri Pacific Ry. Co., 141 Mo. 97 (38
S. W. Repr. 723, 41 S. W. Repr. 887) (open ditch 10
inches wide and 8 inches deep; Hennesey v. Chicago &
N. W. Co., 99 Wis. 109 (74 N. W. Repr. 554), (ditch
from 4 to 6 inches in depth; Davidson v. So. Pacific
Co., 44 Federal Repr. 476, (ditch extending across
track); Peoria, Decatur & Evansville Ry. Co. v. Puck-
ett, 42 Ill. App. 642, (unnecessary cattle guard caused
accident); Korah v. Chicago, etc., Ry. Co., 128 N. W.
Repr. 529; Ford v. Ry. Co., 106 Iowa 85 (75 N. W.
Repr. 650; Fredenburg v. Ry. Co., 114 N. Y. 582 (21
N. E. Repr. 149); Bird v. R. R. Co., 11 N. Y. App. Div.
134 (42 N. Y. Supp. 888).

The unplanked trestle, which caused the injury here,
was not the usual and customary form of trestle main-
tained by railroads within yard limits, and was very
much more dangerous than the ordinary planked tres-
tle: Cunningham v. Bridge Works, 197 Pa. 625; R. R.
Co. v. Hughes, 119 Pa. 307; Vorhees v. Ry. Co., 193 Pa.
115; Whitcher v. R. R. Co., 70 N. H. 242 (46 Atl. Repr.
740); Louisville & Nashville R. R. Co. v. Johnson, 81
Fed. Repr. 679; St. Louis & San Francisco R. R. Co. v.
Keller, 62 Pac. Repr. 905; Hannah v. R. R. Co., 154
Mass. 529 (28 N. E. Repr. 682); Ross v. Ry. Co., 101
Minn. 122 (111 N. W. Repr. 951); Sturgeon v. R. R.

Co., 93 Pac. Repr. 526; Northern Pac. R. R. v. Teeter, 63 Fed. Repr. 527; Sutherland v. R. R. Co., 43 Fed. Repr. 646; Vaillancourt v. Ry. Co., 82 Vt. 416 (74 Atl. Repr. 99); Plank v. R. R. Co., 60 N. Y. 607.

The custom of railroads as to planking their trestles was properly submitted to the jury: Kaylor v. R. R. Co., 216 Pa. 134; Bardsley v. Gill, 218 Pa. 56; Pauza v. Coal Co., 231 Pa. 577; Penna. R. R. Co. v. Jones, 123 Fed. Repr. 753.

If the risk arising from the presence of the unplanked trestle within yard limits was the result of defendant's negligence, it is not a risk which was assumed by the plaintiff unless it is shown that the plaintiff knew of the danger and disregarded same: Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64 (24 Sup. Ct. Repr. 24); Colorado Midland Ry. Co. v. Brady, 45 Colo. 203 (101 Pacific Repr. 62).

The plaintiff was not guilty of contributory negligence: Esher v. R. R. & Mining Co., 28 Pa. Super. Ct. 387.

OPINION BY MR. JUSTICE MOSCHZISKER, March 18, 1912:

The plaintiff, a freight brakeman in the employ of the defendant Company, had his feet crushed by one of its trains on the night of August 6, 1910, at about 10.30 o'clock, which necessitated the amputation of both legs a few inches below the knee. The train, which consisted of fifty-two loaded cars and a caboose, had been brought to a stand-still by the breaking of an air-hose, at a bridge or unplanked trestle across a creek within the limits of a railroad yard of the defendant Company.

The plaintiff's testimony shows that, when the train stopped, in the performance of his duties he descended to the ground and started ahead on the right-hand side; after going a short distance he found the walk too narrow, and crossed over to the left-hand side of the train,

advancing between the east and west bound tracks. In the meantime the fault had been located and remedied, and the train started. The plaintiff stood and watched "to see that everything was all right;" which he said he understood the rules of the Company and the proper performance of his duties required. He then testified, "Everything seemed to be all right..... I ran along a few steps with the train and got hold of the grab-iron..... as anyone would with anything in motion, and I came on this trestle and my toes went down between the ties, and that threw me off my balance. I still held on the grab-iron, trying to catch myself, so that I could get on the train, but I went down, and that is the last thing I remember." It appears that the plaintiff ran along a cinderpath that could be used with safety, that this path at the point where the accident happened suddenly terminated at the unplanked trestle which caused him to trip and fall. The plaintiff stated that although he had previously ridden in the cars over this part of the road, his train had never stopped there before and he had no knowledge concerning the condition of the trestle prior to the happening of the accident; further, that in the regular performance of his duties a freight brakeman was obliged to get on and off moving trains; "that it would be impossible to railroad without doing it." This statement was not denied, and one of the principal witnesses for the defense admitted the custom, stating as to "the ordinary way of mounting a freight train" that "the greater the speed the longer the run you have until you get on. You get the swing of the train, the speed of the train,...... If it is speeding up pretty well you have to run longer until you get the speed of the train to make the mount." Upon the testimony produced the jury had the right to find that the unplanked trestle in the railroad yard at the point where the accident happened presented an unusual, unsafe and dangerous condition which could

easily have been remedied by the use of due and cus-
tomary care on the part of the defendant company.

All the issues involved were clearly presented by the
learned trial judge. The jury were instructed that the
plaintiff had to be absolutely free from contributory
negligence; that it was for them to say whether or not
he was at fault in any of his conduct immediately prior
to or at the time of the accident, and if such fault con-
tributed to the happening of the accident, he could not
recover; they were also told that it was for
them to say whether they would believe the
plaintiff's story, or the version of the defense,
as to the accident and certain statements alleged to
have been made by the plaintiff which were incon-
sistent with his testimony; and if they believed the de-
fendant's version the plaintiff could not recover; and,
further, that if the plaintiff's duties did not require
him to act as he did in watching the train and mount-
ing it while it was in motion, he had no right to do so
and could not recover. More than this, the court
charged that the burden was upon the plaintiff to show
the negligence of the defendant; that if the accident
happened from any other cause than that alleged by
the plaintiff, the verdict would have to be for the de-
fendant; and if the injuries did befall the plaintiff at
the place and under the circumstances detailed by him
and without any fault on his part, before the jury could
bring in a verdict in his favor, they must find that it
was the absence of the planking on the trestle that
caused the accident and that the condition there was
an unusually dangerous one, to be "determined by what
is the common use of such planking in connection with
railroad management, or maintenance or construc-
tion;" that the defendant was only obliged to provide
for contingencies that could be ordinarily anticipated,
and that it was not bound to keep its entire line of road
"as smooth as a floor;" but that if the jury believe
under the circumstances of this case "that it was the

duty of the defendant reasonably to expect or anticipate that the trestle would be crossed in the way and under the conditions in which the plaintiff crossed it, then it may be negligence not to cover it with planks." The issues were found in favor of the plaintiff and judgment was entered upon the verdict. The defendant has appealed and assigns for error the refusal of binding instructions and judgment non obstante veredicto in its favor.

While an employee is deemed to assume the risks ordinarily and reasonably connected with his employment, and is presumed to have notice of those which are obvious, the employer is fixed with the duty to maintain instruments, appliances and conditions which do not expose his employee to dangers not ordinarily or reasonably incident to the employment; the latter has the right to presume that his employer has performed this duty, and he does not assume risks growing out of unusually dangerous conditions not to be reasonably anticipated by him. Where the measure of duty is a standard of ordinary and reasonable care, the degree of which varies according to the circumstances, and where the facts are disputed or there is any reasonable doubt as to the inferences to be drawn from them, the issues must be submitted to the jury. Under the peculiar circumstances of the present case the trial judge could not have ruled as a matter of law that the unplanked condition of the trestle which caused the plaintiff to trip was an assumed risk of his employment. A review of the evidence introduced by the plaintiff satisfies us that it could justifiably be found, considering the location, that the unplanked trestle in question was "not only unusual," but that its condition made it "more dangerous in itself than the ordinary one" so situated; under such circumstances the testimony in relation thereto was proper for the consideration of the jury: Cunningham v. Bridge

Works, 197 Pa. 625, 631; Bardsley v. Gill, 218 Pa. 56, 61.

This is not a case involving nice questions of the proper exercise of engineering skill and judgment which certain authorities hold should not be submitted to the varying and uncertain opinions of juries, but falls rather within the line of cases represented by Vorhees v. Lake Shore & M. S. Ry. Co., 193 Pa. 115, and Kaylor v. Cornwall R. R. Co., 216 Pa. 134. In connection with these cases, it may be noted that the present defendant could have anticipated just as readily that the contingency might arise where a brakeman in the performance of his duties would run from the cinder-path on to this unplanked trestle, as the defendant in the Vorhees case could have foreseen the probability that its brakeman would descend from the top of a car at a particular point where there was insufficient space between its tracks, or, in the Kaylor case, that he would do so in the immediate locality of the telegraph pole which caused the injury.

Whether or not the written rules of the company required the plaintiff to stand by and watch for possible defects in the train after it had made a start, it is not necessary to decide; it clearly appeared that the plaintiff, in so doing, and in subsequently mounting the train while in motion, was only acting in a manner usual to railroad men so employed. All of the questions concerning the alleged negligence of the defendant and the contributory negligence of the plaintiff were for the jury and were properly submitted.

Kerrigan v. Penna. Railroad Co., 194 Pa. 98, does not govern the present case. There, "no custom of common carriers was shown from which a reasonable inference of negligence could be drawn from its (the defendant company's) not ballasting full between the ties; the proof was the other way;" here, there was evidence from which the jury could have found that it was customary for railroads to plank trestles within yards, and, as

before stated, the testimony tended to show that the condition of the defendant's trestle under the surrounding circumstances was unusual and dangerous beyond the ordinary.

The assignments of error are overruled and the judgment is affirmed.