# Palkovitz *v.* American Sheet & Tin Plate Co., Appellant.

*Negligence — Master and servant — Contributory negligence — Case for jury—Charge—Failure to request instructions—Appeal.*

1. In an action by an employee against his employer to recover for personal injuries resulting from the breaking of a cotter-pin in the wheel of a truck, the questions of defendant's negligence and plaintiff's contributory negligence are for the jury, where the evidence tends to show that defendant owned about two hundred trucks whose axles were held in place by cotter-pins, and that its employees, when occasion arose, could use any one of them which happened to be idle; that on the day of the accident plaintiff took the truck in question, worked with it for about two hours, in the usual and ordinary way, when the cotter-pin broke, resulting in his injury; that the employees in using these trucks did not make any inspection, and were not supposed to do so; that an employee of defendant was detailed to oil and repair the trucks, but that neither he nor any one else made any inspection thereof; and that the cotter-pin which broke was "old" and "worn thin" "right in the middle......where it broke," at a point where it could not be seen from the outside.

2. Where in such a case the court charges that if plaintiff was "guilty of, or chargeable with, a lack of ordinary care," or in any negligent manner contributed to his own injury, he could not recover, the defendant on appeal, and after a verdict against him, cannot complain of the inadequacy of the instruction, if the record shows that the trial judge gave an opportunity to defendant's counsel to make any further suggestion, if anything had been

overlooked, and that counsel replied: "We have nothing to suggest."

*Negligence—Release—Evidence—Interpreter—Ignorance of language—Appeals—Statement of questions involved.*

3. In an accident case, where plaintiff was so ignorant of the English language that an interpreter had to be used at the trial and in dealing with plaintiff after the accident and prior to the trial, and where the defendant relies upon a written release signed by the plaintiff with his mark, shortly after the accident, the defendant, on appeal, cannot complain of the insufficiency of the evidence to overcome the effectiveness of the release, where his own witness plainly showed that the alleged release had not been properly explained to plaintiff, or fully read to him in a language which he could understand, but that on the contrary the testimony of this witness bore out the assertion of plaintiff, to the effect that he placed his mark upon the paper believing it to be a mere receipt for relief money.

4. In such a case, criticisms of portions of the charge relating to the release, will not be considered by the appellate court where they are not comprehended by the statement of questions involved.

Argued October 21, 1919. Appeal, No. 11, Oct. T., 1919, by defendant, from judgment of C. P. Lawrence Co., June T., 1914, No. 69, on verdict for plaintiff in case of Joe Palkovitz v. American Sheet & Tin Plate Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Trespass for personal injuries. Before EMERY, P. J.

The court charged in part as follows:

[Now, in addition to denying negligence, defendant has introduced here a paper called a release and which seems to have been signed by plaintiff on or about the 15th day of June, 1914. Defendant contends that that paper releases and relieves it from all liability growing out of this alleged accident to the plaintiff; that the plaintiff voluntarily and of his own free will, after the paper was read and explained to him, said that it was satisfactory and signed it, and that by so doing he now has no standing in court to maintain this action. You

will recall the circumstances connected with the signing of that paper, where it was signed, who were present at the time plaintiff made his mark to it and under what circumstances his mark was made. All the matters pertaining to that entire transaction it is your duty to recall and decide whether plaintiff signed that paper voluntarily, willingly, knowing its full contents, or whether he signed under a misapprehension. If you should find that plaintiff knew the contents of that paper, that it was correctly interpreted to him, that it was explained to him by the people present and that he, after the explanation was made, if it were a correct one, willingly signed it by making his mark, then the case would fall and the plaintiff would have no action here. But if you should find from all the evidence in the case that the plaintiff signed that paper under misapprehension, that he was not aware of the legal import of the paper, or that a deception was practiced upon him, or a fraud, then you would not discard this case, but you would go back to the question of negligence and decide the case upon the evidence relative to the question of negligence.] (2)

Plaintiff presented this point:

"The evidence of the plaintiff is that he cannot read the English language and the alleged release is printed and written in the English language, and if the jury find that plaintiff signed the agreement by making his mark and that said release was not read to him in such manner that he could understand and know that the writing was in full settlement for his injuries, said release will not relieve defendant from liability to plaintiff."

Answer: Affirmed, but gentlemen of the jury, you must take that into consideration, as the evidence in this case both for the plaintiff and defendant shows. (3)

Verdict and judgment for plaintiff for $3,536.66. Defendant appealed.

*Errors assigned,* among others, were (2, 3) above instructions, quoting them.

*D. A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *Martin & Martin,* for appellant.—The workman must use his own judgment, as to the manner of handling appliances which are properly provided, and the use of which is obvious.

An employer is not required to be always present personally or by a representative to guard against an unexpected or a transient peril: Hurley v. Western Allegheny R. R. Co., 238 Pa. 65; Coleman v. Keenan, 223 Pa. 29; Durst v. Carnegie Steel Co., 173 Pa. 162; Walton v. Bryn Mawr Hotel Co., 160 Pa. 3; Sykes v. Packer, 99 Pa. 465.

The release was valid and not overcome by testimony: Ogden v. Phila. & West Chester Traction Co., 202 Pa. 480; Spritzer v. Penna. R. R. Co., 226 Pa. 166; Reese v. Penna. R. R. Co., 233 Pa. 363; Reese v. Penna. R. R. Co., 229 Pa. 340; Wojciechowski v. Spreckels Sugar Refining Co., 177 Pa. 57; Gibson v. W. N. Y. & P. R. R. Co., 164 Pa. 142; Ross v. Blair Limestone Co., 69 Pa. Superior Ct. 128; Gordon v. Great A. & P. Tea Co., 243 Pa. 330.

*John P. Lockhart,* with him *Robert K. Aiken,* for appellee, cited as to selecting his own truck: Van Duzer v. Com. Tel. Co., 236 Pa. 538; Finnerty v. Burham, 205 Pa. 305; McGrath v. Thompson, 231 Pa. 631.

Cited as to evidence attacking the release: Farmers Mut. Fire Ins. Co. v. Blair & Shenk, 87 Pa. 124; Clayton v. Consolidated Traction Co., 204 Pa. 536.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1920:

Plaintiff, Joe Palkovitz, alleging he had been injured through the negligence of his employer, the American Sheet & Tin Plate Co., sued in trespass and recovered a

verdict, upon which judgment was entered; defendant has appealed.

On May 4, 1914, Palkovitz was engaged in hauling boxes of tinplate piled upon a four-wheel truck, the latter about three feet long and two feet wide, with steel axles at either end; the wheels were held in place on these axles by what are known as "cotter-pins," some three and a half inches long. Defendant owned approximately 200 such trucks, and its employees, when occasion arose, could use any one of them which happened to be idle. On the morning of the accident, Palkovitz took the truck in question; he and a fellow employee, named Schuler, worked with it successfully for about two hours, when, with an ordinary load of 15 boxes thereon, Schuler pulling in front and plaintiff pushing behind, in a manner which he testified was necessary and usual under the circumstances, the cotter-pin holding the left-hand rear wheel broke, the wheel came off, and the load fell upon one of plaintiff's hands, badly injuring it.

The testimony shows that, in using these trucks, defendant's employees did not make an inspection, and were not supposed to do so, but took any that in a general way appeared fit for use. It also shows that the cotter-pin, the breaking of which caused plaintiff's injury, was "old" and "worn thin" "right in the middle ......where it broke."

While defendant's employees, when handling the trucks, at times took out the cotter-pins for the purpose of greasing the axles, it also appears a man was employed to do such oiling and attend to all necessary repairs. This man stated that neither he nor anyone else made inspections; although, according to his testimony, the cotter-pins were apt to become flat, where they "rubbed against" the wheel, at a point which could not be seen "from the outside," because, as he explained, "you would have to take the wheel off or take the pin out to see that."

Without going further into the facts, it is apparent from those already stated that the issues of defendant's alleged negligence and plaintiff's contributory negligence were for the jury; and we are not convinced of any reversible error upon these points in the charge. It may be that what defendant now states as its theory of plaintiff's contributory negligence was not precisely presented to the jury; but, after detailing the circumstances attending the accident, and particularly calling attention to the manner in which Palkovitz was pushing, with his back to the load, the jury were told more than once that, if plaintiff was "guilty of, or chargeable with, a lack of ordinary care," or in any negligent manner contributed to his own injury, he could not recover. Moreover, at the end of his charge, the trial judge said to counsel: "Before taking up the points, is there anything we have overlooked?" To which defendant's attorney replied: "We have nothing to suggest." Under these circumstances, appellant cannot justly complain of the manner in which the issue of contributory negligence was submitted.

The point in the case which counsel for defendant most earnestly urges upon our attention concerns an alleged release, executed by plaintiff in favor of defendant company.

On June 15, 1914, Palkovitz put his mark to a typewritten document, by the terms of which, in consideration of the moneys to be paid him by his employer, he released the latter from all claims on account of his injury. He was paid $12 at the execution of this paper, and subsequently received other sums aggregating something over $106. Plaintiff, a Pole, was so ignorant of the English language that an interpreter was used at the trial. It also appears, in defendant's evidence, that, recognizing plaintiff could neither read, write nor properly understand English, an interpreter was used to explain the document to him at the time the alleged release was executed. This interpreter, a man named

Klamar, when called as a witness by defendant, testified there were parts of the paper which he, himself, could not understand, these being explained to him by other persons present at the time, which explanations he used in interpreting to plaintiff; but when the other persons were called, they were unable to tell just exactly what parts of the document they had explained or what explanations they had given in reference thereto. Klamar, when asked whether he had told plaintiff the money he would receive was to be "in full settlement of all claims for injuries," replied that he had told him to sign the contract "for his relief"; and the witness repeated that he had informed Palkovitz the document "was a receipt for the relief and he couldn't get the relief money unless he signed the paper." In brief, defendant's principal witness on this point plainly showed that the alleged release had not been properly explained to Palkovitz or fully read to him in a language which he could understand; on the contrary, the testimony bears out the assertion of plaintiff, to the effect that he placed his mark upon the paper believing it to be a mere receipt for relief money. No matter what, ordinarily, the proper rule of law may be in cases of this kind, it is clear that, under the circumstances at bar, defendant, after its own witness had destroyed the effectiveness as a release of the writing in question, is not in a position successfully to maintain plaintiff failed to produce sufficient evidence to that end.

Appellant's statement of questions involved suggest only two points concerning the matter in hand, and they go, first, to the sufficiency of plaintiff's evidence to overcome the release, and, next, to certain rulings on the admission of testimony relating thereto; but, nevertheless, defendant's counsel, in both their oral and written arguments, criticize certain parts of the trial judge's charge, wherein he deals with this document and the manner in which its effectiveness might be destroyed. Since, however, so far as the binding effect of the release

is concerned, on the evidence produced by defendant itself, instructions might have been given, with propriety, for plaintiff, and the rulings on the evidence were of a kind within the discretion of the trial judge, it is unnecessary to discuss the criticisms to which we have referred; and, moreover, since they are not comprehended by the statement of questions involved, we are not called upon to do so.

For the reasons stated, the assignments of error are overruled and the judgment is affirmed.